UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
OLGA HERNANDEZ, NELSON FLOREZ,  :
ANDRES GARCIA, JOSE ORACIO GARCIA,  :
ADRIAN SANCHEZ, and GUSTAVO CANTOS,  :
                                    :
          Plaintiffs,  :         **MEMORANDUM AND ORDER**
                                      :
         -against-  :        06-CV-1565 (DLI) (RML)
                                      :
LA CAZUELA DE MARI RESTAURANT, INC.,  :
MARILUZ OTERO DE BARRERA, and OSCAR  :
DIEGO BARRERA,  :
                                      :
         Defendants.  :
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Defendants La Cazuela de Mari Restaurant, Inc., Mariluz Otero de Barrera, and Oscar Diego

Barrera ("Defendants") seek an order vacating and setting aside the default judgment entered against

them by this court on October 5, 2006.

For the reasons set forth below, Defendants' motion to vacate is denied.

**I.      Background**

Plaintiffs Olga Hernandez, Nelson Florez, Andres Garcia ("A. Garcia"), Jose Oracio Garcia

("J. Garcia"), Gustavo Cantos, and Adrian Sanchez ("Plaintiffs") brought this action against

Defendants to recover unpaid overtime and minimum wages allegedly due under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and the New York Minimum Wage Act, N.Y.

Labor Law §§ 650, *et seq.*  Plaintiffs further sought unpaid "spread of hours" pay under Title 12,

Section 137-1.7 of the New York Compilation of Codes, Rules and Regulations.  In addition,

Plaintiff Hernandez raised a claim against Defendants for breach of contract.  Plaintiffs are former

employees of La Cazuela de Mari Restaurant, Inc. ("La Cazuela de Mari"), owned and operated by defendants Mariluz Otero de Barrera ("M. Barrera") and Oscar Diego Barrera ("O. Barrera"). (Faillace 4/27/07 Declaration ("Faillace Decl."), ¶ 3; O. Barrera Affidavit ("Aff.") Defendants' ("Defs.'") Exhibit ("Exh.") G, ¶¶ 2-4; M. Barrera Aff. Defs.' Exh. H, ¶¶ 2-4.) M. Barrera is the president of La Cazuela de Mari, and O. Barrera is the vice president. (M. Barrera Aff. Defs.' Exh. H, ¶ 2; O. Barrera Aff. Defs.' Exh. G, ¶ 2.)

Plaintiffs Hernandez, Florez, A. Garcia, and J. Garcia originally instituted this action in the Southern District of New York on February 16, 2006. The case was subsequently transferred to this court on March 24, 2006. An amended complaint was filed on April 20, 2006, adding Cantos and Sanchez as plaintiffs. Defendants failed to answer either the original complaint or the amended complaint. On October 5, 2006, on Plaintiffs' motion, this court entered a default judgment against all three Defendants ("Default Judgment") and referred the case to U.S. Magistrate Judge Levy for a determination of damages.

By order dated October 6, 2006, Judge Levy set a briefing schedule for the parties to make their submissions on the issue of damages, fees, and costs and directed Plaintiffs to mail a copy of his order to each of the Defendants. In a letter to the court dated November 15, 2006, Plaintiffs moved for an extension of time to make their submission, noting, in addition, that Defendants had "repeatedly resisted service of papers in this action," but Plaintiffs nevertheless had served Defendants by Federal Express overnight mail. Judge Levy granted Plaintiffs an extension, setting a new briefing schedule and again directing Plaintiffs to mail Defendants a copy of his order.

On December 15, 2006, Plaintiffs submitted their papers on the issue of damages. Edward A. Roberts, counsel representing Defendants at the time, submitted a letter to the court on December

21, 2006, stating that he "expect[ed] to do a motion seeking leave of court to interpose and answer on behalf of the defendants." No such motion was forthcoming. Again, Defendants failed to submit any opposition to Plaintiffs' papers in support of their claims for damages.

Judge Levy issued a Report and Recommendation on March 2, 2007 ("Recommendation"), recommending that Plaintiffs be awarded damages and prejudgment interest in the amount of $335,413.20 and costs in the amount of $570. In the Recommendation, Judge Levy directed the parties to file any objections to the Recommendation within ten business days.

On March 8, 2007, after learning that Defendants' restaurant was listed for sale for significantly less than fair market value, Plaintiffs filed an application for an order of attachment and a temporary restraining order. *See* Plaintiffs' 3/5/2007 Memorandum in Support of Attachment and Exhs. F and G, ¶¶ 3-5, thereto. The same day, this court issued an Order to Show Cause for a temporary restraining order against Defendants, prohibiting them from secreting, conveying, or otherwise transferring their assets, except for transfers in good faith for fair value in the ordinary course of business. However, Plaintiffs' application for an order of attachment was denied. Defendants were directed to file a reply to the Order to Show Cause by March 15, 2007, and the parties were further ordered to appear before the court on March 16, 2007 for a hearing to be held on the matter of the injunction and requested attachment.

On March 13, 2007, attorney Gary J. Young of the law firm Robert K. Young and Associates, filed a letter noting his appearance as counsel for Defendants. In the same letter, Defendants requested an extension of time to respond to the Order to Show Cause and an adjournment of the hearing scheduled for March 16, 2007. This court denied Defendants' request for an adjournment of the March 16 proceedings, directing all parties to appear as scheduled. However, the court

granted Defendants' application to the extent that the hearing concerning the injunction and the order of attachment was postponed to a date and time to be set at the March 16 proceedings. The court also granted Defendants' request for an extension of time to file their response to the Order to Show Cause, pursuant to a motion schedule also to be set on March 16.

At the March 16 conference, the court granted Defendants' request to move for vacatur of the Default Judgment, setting a briefing schedule for the parties. The parties were further granted permission to submit any objections to the Recommendation in their papers.

On March 20, 2007, Roberts apparently mailed and faxed a letter to counsel for Plaintiffs stating that he "would be submitting an order to show cause to the Court on Wednesday March 21, 2007 at approximately 10:30 A.M." and that the "said object of the order to show cause would be to vacate the defendant's default and to stay the Court's signature of the proposed order in the within matter." (*See* Defs.' Exh. E.) Again, no submission was forthcoming from Roberts. Instead, on March 20, 2007, Roberts executed a Consent to Change Attorneys form, agreeing that current counsel for Defendants be substituted in his stead. (*See* Defs.' Exh. F.)

Defendants now submit this motion to vacate the Default Judgment pursuant to Federal Rules of Civil Procedure 55(c) and 66(b), asserting good cause shown and, in effect, excusable neglect and gross attorney negligence. Plaintiffs oppose Defendants' motion.

## II.    Defendants' Motion to Vacate the Default Judgment

Default judgments are generally disfavored due to the principle that cases should be decided on their merits. *See U.S. v. Cirami* ("*Cirami* II"), 563 F.2d 26, 33 (2d Cir. 1977). At the same time, in the interest of the finality of judgments, a reversal of a default judgment is only appropriate in limited circumstances. *See id.* Federal Rule of Civil Procedure 55(c) permits a court to set aside a

default judgment either for "good cause shown" or in accordance with Rule 60(b). Rule 60(b) sets forth six subsections articulating reasons for which a court may vacate a default judgment. Defendants bring their petition under subsections (1) and (6), which permit vacatur of a default judgment for, in pertinent part, "(1) excusable neglect. . . or (6) any other reason justifying relief from the operation of the judgment." *See* Fed. R. Civ. P. 60(b). Thus, this court can only set aside the Default Judgment if it finds that Defendants here have shown (1) good cause, (2) excusable neglect, or (3) any other reason justifying relief from the operation of the judgment.

### A.  Good Cause

Determining whether good cause is adequately demonstrated to vacate a default judgment involves consideration of three factors: "[(1)] whether the default was willful, [(2)] whether setting it aside would prejudice the adversary, and [(3)] whether a meritorious defense is presented." *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir. 1987).

### 1.  Willfulness

The willfulness standard encompasses conduct that is deliberate or egregious or is carried out in bad faith. *World Wrestling Entm't, Inc. v. De Arce*, No. 3:03cv1568(DJS), 2007 U.S. Dist. LEXIS 26985, at *5 (D. Conn. Mar. 30, 2007) (citing *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996)). Where a party makes a strategic decision to default, it is not appropriate for a court to vacate a default judgment. *See Am. Alliance Ins. Co.*, 92 F.3d at 60. Defendants claim that their default was not willful because they reasonably relied on the representations of their attorney that he would take all necessary actions on their behalf.

According to Defendants' papers, the law office of Roberts and Wilson was retained by O. Barrera pursuant to a retainer agreement signed and dated March 16, 2006 ("Retainer Agreement").

(*See* Defs.' Exh. A.) Although the Retainer Agreement stated that Roberts and Wilson would represent just O. Barrera "in Federal Court against in which [*sic*] he is defendant," O. Barrera asserts in his affidavit that Edward A. Roberts, presumably the "Roberts" of "Roberts and Wilson," informed O. Barrera that he would represent all three Defendants in this action. (*See* O. Barrera Aff. Defs.' Exh. C, ¶ 3.) In consideration for Roberts' services, O. Barrera paid $1,500.00 by check made out to "Roberts & Wilson" the day the Retainer Agreement was signed, and $800.00 by check made out to "Edward A. Roberts, Esq" dated November 30, 2006. (*See* Defs.' Exhs. A, B, D.)

O. Barrera stated in his affidavit that, after his initial consultation with Roberts, he contacted Roberts frequently by telephone. (*See* O. Barrera Aff. Defs.' Exh. C, ¶ 5.) Roberts informed O. Barrera that "everything was fine." *Id.* O. Barrera further asserted that, on or about March 5, 2007, he received Plaintiffs' application for an order of attachment and subsequently attempted to contact Roberts "on several occasions," but Roberts did not return his calls. (*See* O. Barrera Aff. Defs.' Exh. C, ¶¶ 7-8.) O. Barrera attested that he believed Roberts was handling the case on his behalf from the date the Retainer Agreement was signed until March 5, 2007, and that Roberts was using his best efforts during this time to protect Defendants' rights and interests. (O. Barrera Aff. Defs.' Exh. C, ¶ 10.) On March 13, 2007, O. Barrera retained current defense counsel, Robert K. Young & Associates. (O. Barrera Aff. Defs.' Exh. C, ¶ 9.)

Plaintiffs point out that Defendants were personally served in August 2006 with Plaintiffs' amended motion for the entry of a default judgment against Defendants. (*See* Faillace Decl., ¶ 8.) Furthermore, Defendants, either all or in part, have been named as defendants in at least three other

actions in this district in which they have defaulted.[1]  In one such action, damages, costs, and fees

in the amount of $177,875.00 were awarded against the Defendants,[2] and in another, $3,500 was

awarded against them.[3]

This is not a case of naive, trusting individuals scrupulously relying on their attorney who,

unbeknownst to the unwitting clients, failed to take any action to defend them.  Nor is this a case

involving defendants who cannot be expected to understand the legal term "default" and its practical

implications, even in the absence of a reliable attorney to explain the term.  Instead, this case

involves defendants–experienced businesspeople and restauranteurs–who are well aware of the legal

system in this district, having been sued in the Eastern District of New York in at least three other

actions in the past six or seven years and having defaulted in each of those earlier actions.  These

Defendants knew, based on first-hand knowledge, what would befall them if they failed to answer

Plaintiffs' complaint and failed to oppose Plaintiffs' motion for a default judgment.  In one prior

---

[1]*Nat'l Satellite Sports, Inc. v. La Cazuela De Mari, Restaurant, Inc., Mari Luz Otero Vergara, and Oscar Barrera*, 01 CV 04310 (RJD) (RLM) (default entered by Clerk on February 1, 2002 as to La Cazuela De Mari, Restaurant, Inc. and Mari Luz Otero Vergara);  *Kingvision Pay-Per-View Ltd. v. Mari Luz Otero Vergara and La Cazuela De Mari Restaurant*, 01 CV 07514 (RR) (ASC) (default judgment entered against all defendants on December 17, 2002); *Universal Sports Network, Inc. v. La Cazuela De Mari, Restaurant, Inc., Mari Luz Otero Vergara, Diego Barrera,* 00 CV 04579 (FB) (JMA) (default judgment entered against all defendants on March 30, 2001).  Although the foregoing cases name "Mari Luz Otero Vergara" as a defendant rather than "Mariluz Otero de Barrera," a defendant in the instant case, Defendants do not contest Plaintiffs' implication that the two name variations represent the same person.

[2]*Universal Sports Network, Inc.*, 00 CV 04579 (FB) (JMA).  The docket sheet for this case reflects that, over one year after the default judgment awarding $177,875 against the defendants was entered, there was a stipulation of dismissal of the complaint with prejudice by the plaintiff.

[3]*Kingvision Pay-Per-View Ltd.*, 01 CV 07514 (RR) (ASC)

instance, such conduct had resulted in the entry of a judgment of $177,875 against them.

While it may have been reasonable for Defendants to rely, early in the litigation, on their attorney's representations that "everything was fine," once they received notice that they had defaulted, it was no longer reasonable for them to rely on their attorney's assurances. Defendants had sufficient time to hire another attorney, or they could have appeared before the court *pro se*. Their failure to exercise either option cannot be characterized as innocent or reasonable.

Instead, in light of their past litigation experience, it appears that their conduct adhered to an ill-considered "wait-and-see" litigation strategy. Despite Roberts' obvious failure to act on their behalf, evinced by the default judgment entered against Defendants, Defendants chose not to hire another attorney until many months later–*after* Magistrate Judge Levy issued his Recommendation awarding Plaintiffs over $300,000 in damages and costs, *after* Plaintiffs moved for an attachment and temporary restraining order, preventing the sale of Defendants' restaurant, and *after* this court issued an Order to Show Cause for a temporary restraining order. Defendants were attempting to sell the restaurant for substantially less than its alleged fair market value when the temporary restraining order was issued.[4] (Faillace 3/5/07 Affirmation, ¶ 7.) Clearly, Defendants' hand was finally forced, which explains their eleventh hour appearance before the court.

Based on the evidence of their behavior in this and past actions, Defendants' conduct here can only be characterized as deliberate and, thus, willful.

## 2. Prejudice

Defendants argue that Plaintiffs would not be prejudiced by a reversal of the Default

---

[4]The timing of the posting for sale of the restaurant is suspect and may have been an attempt to foil Plaintiffs' attempt to recover on the default judgment.

Judgment.  Plaintiffs contend that they have already been prejudiced due to the delay and costs incurred with respect to obtaining the Default Judgment and countering Defendants' current motion to vacate.

While Plaintiffs have incurred costs related to obtaining the Default Judgment and now opposing Defendants' motion to vacate, Plaintiffs, in any event, would have incurred legal fees and costs in pursuing their claims had Defendants not defaulted.  The incurrence of these costs does not establish prejudice.  Nor does mere delay, without more, constitute prejudice.  *United Overseas Bank v. Marchand*, 87 Civ. 8572 (RJW), 1996 U.S. Dist. LEXIS 17809, at *25 (S.D.N.Y. Dec. 4, 1996). However, these factors may appropriately be considered when assigning responsibility for fees and costs.

### 3.      Meritoriousness of Defense

Despite any meritoriousness of an anticipated defense, a default judgment should not be vacated if the default was willful, which this court finds is the case here.  *See S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991).  However, the court will briefly address Defendants' claim that it has a meritorious defense.

### a.      Individual Defendants as Proper Parties

Defendants allege that M. Barrera and O. Barrera are not the proper parties because they never employed any of the Plaintiffs.  Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d). Courts have consistently held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).  Moreover,

a corporate officer who is directly responsible for a failure to pay statutorily required wages is subject to liability for a corporation's failure to fulfill its minimum wage obligations under the FLSA. *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 387 (2d Cir. 1989).

The New York Minimum Wage Act defines "employer" as "any individual. . . acting as employer." N.Y. Labor Law § 651 (2007). Like the definition for "employer" under the FLSA, the definition under New York minimum wage law is expansive, and the question of whether an individual is an "employer" under New York law involves the same legal considerations as those under federal law. *See Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005); *see also Perero v. Food Jungle, Inc.*, 05 CV 4347 (JG), 05 CV 5169 (JG), 05 CV 5170 (JG), 2006 U.S. Dist. LEXIS 73409, at *14 (E.D.N.Y. Aug. 7, 2006).

M. Barrera is the president of La Cazuela de Mari, and O. Barrera is the vice president. Together, they own La Cazuela de Mari, and they both acted as managers of the restaurant. O. Barrera, in particular, was responsible for paying Defendants their wages. (O. Barrera Aff. Defs.' Exh. N, ¶¶ 3-10.) It is not dispositive, as Defendants attempt to argue, that M. Barrera and O. Barrera did not personally employ Plaintiffs (*i.e.*, that La Cazuela de Mari employed Plaintiffs). As owners and officers with operational control of the restaurant, both individuals are jointly and severally liable with the restaurant corporation for any failure to pay statutorily mandated wages under both federal and New York law.

### b. La Cazuela de Mari's Ownership of the Restaurant

Defendants further assert that their restaurant came under new ownership and control in October 2005, apparently arguing that La Cazuela de Mari should not, in any event, be responsible for any wages owed Plaintiffs starting the date of the change of ownership. Defendants' argument

here does not go to the meritoriousness of their defense; they do not challenge the fact that they owned, controlled, and operated the restaurant at least prior to October 2005, for which period they are unquestionably responsible for any wages owed. Whether Defendants owned, controlled, and operated the restaurant after October 2005 is a question that goes to the issue of allocation of damages but does not abrogate Defendants' ultimate liability in this dispute.[5]

### c. Payroll Records Submitted by Defendants

Defendants have provided copies of alleged pay records for Plaintiffs, purportedly indicating the time worked and actual wages received by each of the Plaintiffs. Each pay record contains the handwritten initials of one of the Plaintiffs, who, Defendants claim, signed their initials on the pay record upon receipt of the wages as indicated. Plaintiffs dispute the authenticity of these documents, claiming that they did not initial any of the submitted pay records. To this end, Plaintiffs provide the report of an expert handwriting witness who determined that the handwriting for the initials is not consistent with any of the Plaintiffs' handwriting and that, instead, the initials were consistent with O. Barrera's handwriting on the top portions of each receipt. (*See* Plaintiffs' ("Pls.'") Exh. G.)

For Defendants to convince the court that they have a meritorious defense, the evidence they submit must be "highly convincing." *See Cirami* II, 563 F.2d at 33. The credibility of Defendants' evidence here is highly dubious. Each of the payroll records presented by Defendants is labeled "EMPLOYEE'S STATEMENT" at the bottom of the record, indicating that the documents are the copies of the payroll records typically given to employees as receipts. (*See, e.g.*, Exh. O.) Clearly, then, the employee's copies of the payroll records were never delivered to Plaintiffs. Defendants'

---

[5]The issue concerning calculation of damages will be considered by the court in a separate opinion.

evidence could easily have been fabricated, as Plaintiffs insist is the case, because Defendants knew Plaintiffs would not be able to come forward with conflicting documents. Furthermore, Defendants concede that several of the payroll records presented to the court reflect payments to Hernandez made "off. . . the books." (O. Barrera Aff. Defs.' Exh. V, ¶ 2.) In other words, Defendants falsified either their financial records for tax purposes or at least some of the payroll records now submitted as evidence against Plaintiffs, a fact that undermines the credibility of Defendants' proffered payroll records. Moreover, Defendants do not submit their financial record books or tax records to support their payroll evidence of any wages paid to Plaintiffs "on the books," except tax return documents for 2002 (but no other years) reflecting wages paid to Hernandez. (*See* Exh. U.) Given the questionable veracity of the proffered payroll records, such records presented by Defendants, without more, do not point to a meritorious defense.

### d.    Hernandez' Breach of Contract Claim

In his Recommendation, Magistrate Judge Levy correctly found that this court lacks subject matter jurisdiction over Hernandez' breach of contract claim. Accordingly, this claim does not add any merit to Defendants' suit.

As this court finds that Defendants' default was willful and that they do not present a meritorious defense, vacatur of the Default Judgment is not warranted for "good cause" under Rule 55(c).

### B.    Excusable Neglect Under Rule 60(b)(1)

A default judgment may be vacated under Rule 60(b) in a case involving "excusable neglect." Fed. R. Civ. P. 60(b)(1). Defendants have offered no evidence explaining Roberts' failure to act on their behalf in this action. Defendants do not provide an affidavit from Roberts to this end, nor do

they provide any statement regarding their efforts to obtain Roberts' explanation for his failure to represent them.[6]  Instead, Defendants conclusorily assert that Roberts was negligent and that they relied upon his representations that "everything was fine" to their detriment.  Nonetheless, in the absence of any other explanation, Roberts' virtually complete absence from this case can only be viewed as gross negligence.

An attorney's gross negligence does not qualify as "excusable neglect" under Rule 60(b)(1). *Alvarado v. Manhattan Worker Career Ctr.*, 01 Civ. 9288 (CBM), 2003 U.S. Dist. LEXIS 19339, at *7 (S.D.N.Y. Oct. 29, 2003).  The Second Circuit has "consistently refused to relieve a client[, under Rule 60(b)(1),] of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload." *U.S. v. Cirami* ("*Cirami* I"), 535 F.2d 736, 739 (2d Cir. 1976) (citations omitted).  The reasoning is that "a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions." *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).

Accordingly, Rule 60(b)(1) provides no relief for Defendants based on their assertions that Roberts neglected to act on their behalf.  *See Dulasky v. Conrail*, No. 87-CV-482, 1991 U.S. Dist. LEXIS 742, at *3 (N.D.N.Y. 1991) ("[T]he incompetence and ineptitude of [plaintiff counsel's]

---

[6]Defendants state in their Reply that, "if the court is so inclined, the Defendants would subpoena E. Roberts, Esq[.] and learn why. . . he failed to defend them."  As mentioned, Defendants have not described any efforts to ascertain the reason for Roberts' failure to represent them, despite the fact that the record reflects that Defendants and/or Defendants' current counsel has recently been in contact with Roberts.  Perhaps the answer requires simply that the question be asked, rather than resorting to the "sledgehammer to a nail" approach of issuing a subpoena. In any event, this is a question Defendants should have asked well before they submitted their motion to vacate; their failure to do so is no reason for this court to delay its decision on their motion.

representation" is a situation that "falls squarely within the no-relief zone as defined in this circuit.").

### C.     Other Reasons Justifying Relief Under Rule 60(b)(6)

Relief under Rule 60(b)(6) is reserved for "exceptional circumstances" or "extreme hardship" and is only available if no other subsection of Rule 60(b) applies. *Nemaizer*, 793 F.2d at 63; *Cirami II*, 563 F.2d at 30.  The Second Circuit has repeatedly expressed a reluctance to grant relief under this subsection on the ground of an attorney's gross negligence, particularly absent extraordinary circumstances and a showing of diligence on the part of the movant to induce the attorney to fulfill his or her duty. *E.g., Nemaizer*, 793 F.2d at 63; *see also Dominguez v. U.S.*, 583 F.2d 615, 618 (2d Cir. 1978).  Extraordinary circumstances have been  found where the movant's attorney completely disappeared, *Vindigni v. Meyer*, 441 F.2d 376, 377 (2d Cir. 1971), and where the movants' attorney suffered from a mental disorder leading him to neglect his clients' business, *Cirami* II, 563 F.2d at 22.

As noted earlier, Defendants submitted no evidence explaining the circumstances surrounding Roberts' failure to act on their behalf.  The record reflects that Roberts submitted two letters, one to the court dated December 21, 2006, and one to Plaintiffs dated March 20, 2007, indicating his intent to intervene on behalf of his clients, but Roberts never followed through.  Roberts clearly had not completely disappeared, but beyond that this court knows no more and will not guess at the reasons for his behavior.

Thus, absent extraordinary circumstances justifying his conduct, Roberts' alleged gross negligence does not provide an adequate reason under Second Circuit law to vacate the Default Judgment under Rule 60(b)(6).  Moreover, O. Barrera's bare assertions that he "contacted Roberts frequently by telephone" and was informed that "everything was fine," and later, upon receipt of

Plaintiffs' application for an order of attachment, attempted to contact Roberts "on several occasions" do not reflect particular diligence on the part of Defendants. As explained more fully above, Defendants' failure to hire alternative counsel or to appear themselves before the court not only reflects a complete *lack* of diligence, but a calculating deliberateness that cannot now be rewarded under Rule 60(b)(6), which, therefore, offers no relief for Defendants.

### D.  Procedural Issues

Defendants object to Plaintiffs' failure to adhere to this court's individual bundling rule. *See* Individual Rule IV.D. Defendants allege that Plaintiffs failed to provide them with a "PDF" copy of their opposition papers for inclusion in Defendants' submission of its motion to vacate to the court.

Plaintiffs should have sent Defendants a PDF version of their papers under this court's individual rules rather than making their submission directly to the court. Nonetheless, it would be disproportionately harsh for this court to thereby disregard Plaintiffs' papers altogether, as Defendants suggest. However, Defendants' objection is duly noted, and Plaintiffs are admonished to adhere to the individual rules of this court.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to vacate the Default Judgment entered against them is DENIED in its entirety.

SO ORDERED.


DATED:      Brooklyn, New York
            June 12, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge